UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| STEPHEN A. RANGE and DON'CHELLE RANGE, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   No. 3:08 CV 09 ) |
| WAL-MART SUPERCENTER and SECURITAS SECURITY SERVICES USA, INC., | ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

### I. BACKGROUND

Currently before the court are two motions to dismiss filed by defendants Wal-Mart Supercenter (Wal-Mart) (DE # 20, 21) and Securitas Security Services USA, Inc. (Securitas) (DE # 13, 14). These motions seek to dismiss the complaint filed by *pro se* plaintiffs Stephen and Don'Chelle Range. (DE # 1.) Plaintiffs responded to the motions (DE # 26), and defendants replied. (DE # 27, 28.) The court now **GRANTS** both motions and **DISMISSES** the case.

### II. FACTS

Plaintiffs allege that on December 29, 2007 they went shopping at a Wal-Mart Supercenter, apparently located in South Bend, Indiana. (DE # 1 at 1.) After selecting and purchasing some goods, plaintiffs were walking toward the exit when a Wal-Mart employee asked them to show a receipt for their purchase. (*Id.*) Plaintiffs refused and continued towards the exit. (*Id.* at 2.) Several other Wal-Mart employees and a Securitas

security guard then stopped plaintiffs and took control of the items they had just purchased. (*Id.*) It is unclear from plaintiffs' complaint whether the store reimbursed them for the items.

Plaintiff Stephen Range claims that he often is stopped and asked for receipts when leaving Wal-Mart, while other customers are not stopped. (DE # 1 at 2.) He and his wife Don'Chelle are African-American, and thus allege Wal-Mart's practices "imposed an adverse impact disproportion ally [sic] on African-Americans." (*Id.*) Plaintiffs claim that, by stopping them and seizing their items, Wal-Mart and Securitas violated the Fourth Amendment's protections against unreasonable search and seizure. (*Id.*) Plaintiffs also allege that these acts violated Indiana harassment and criminal conversion laws. (*Id.*) Plaintiffs request one million dollars in damages. (*Id.*)

Wal-Mart has moved to dismiss pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), arguing that plaintiffs failed to state a claim upon which relief can be granted. In its motion, Wal-Mart asserts that plaintiffs cannot pursue a Fourth Amendment claim because Wal-Mart is not a state actor and its actions were not attributable to the state. (DE # 21 at 3-4.) Wal-Mart also contends that there is no private right of action for harassment under the Indiana law plaintiffs cited, and that plaintiffs' conversion claim fails because they have not suffered any "pecuniary loss." (DE # 21 at 5-7.) Additionally, Wal-Mart notes that conversion and harassment are state-law claims, and that this court would lack subject matter jurisdiction to consider them since plaintiffs have failed to show that diversity jurisdiction exists. (*Id.*)

2

Securitas's arguments also come under RULE 12(b)(6), and are essentially the same: it is not a state actor, there is no private right of action for harassment, and there is no pecuniary loss to support conversion. (DE # 14 at 2-6.)

In their response, plaintiffs appear to drop their allegations against Securitas, and, with regard to Wal-Mart, state that they are not pursuing a claim under the Indiana criminal harassment statute or the Fourth Amendment. (DE # 26 at 1.) Instead, plaintiffs explain that they "mentioned of [sic] the statutes to illustrate and confirm" that Wal-Mart's actions were contrary to law and "against the peace and dignity of the State and plaintiffs." (*Id.* at 1-2.) Plaintiffs also re-allege that Wal-Mart discriminates against African-Americans by asking them for receipts for unbagged items and not asking for receipts from Caucasians in the same situation. (*Id.*) Plaintiffs conclude that they are "pursuing a civil rights lawsuit against Wal-Mart Supercenter, for racial harassment and discrimination." (*Id.* at 3.) Plaintiffs do not cite any statutes that establish a cause of action, and do not allege the basis for this court's jurisdiction.

In reply, Securitas argues that it should be dismissed since plaintiffs have apparently dropped their allegations against it. (DE # 27 at 1-3.) Securitas also asserts that plaintiffs are attempting to raise new claims in their response brief, and that a party cannot amend its complaint to raise new claims in a response to a motion to dismiss. (*Id.* at 3.)

In its reply, Wal-Mart essentially copies Securitas's arguments. (DE # 28.) Plaintiffs have conceded that their claims are incorrect, Wal-Mart asserts, and they cannot raise new claims in response to a motion to dismiss. (*Id.* at 1-2.)

**III. STANDARD OF REVIEW**

Plaintiffs are proceeding *pro se*. When reviewing *pro se* complaints, a court must apply less stringent standards than if the complaint had been drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). When dealing with any motion to dismiss, a court must accept "as true all well-pleaded factual allegations in the complaint and make all plausible inferences from those allegations in the plaintiffs' favor." *Levy v. Pappas*, 510 F.3d 755, 764 (7th Cir. 2007) (citing *County of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 817 (7th Cir. 2006)). Ambiguities in the complaint should be construed in the plaintiff's favor, *Perry v. Sheahan*, 222 F.3d 309, 312 (7th Cir. 2000) (citing *Curtis v. Bembenek*, 48 F.3d 281, 283 (7th Cir. 1995)), though a court need not strain to find inferences favorable to the plaintiff which are not apparent on the complaint's face, *Coates v. Ill. State Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir. 1977), nor should it "ignore any facts alleged in the complaint that undermine the plaintiff's claim." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (quoting *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993)).

**IV. ANALYSIS**

*A. Plaintiffs' Claims against Securitas*

Securitas is correct that in plaintiffs' response to the defendants' motions to dismiss plaintiffs appear to waive any claims against it. Plaintiffs fail to mention Securitas (*see* DE # 26 at 1-3), even though they were ordered to address both defendants' motions by March 30, 2008 (*see* DE # 22 at 3), and claim to be doing so (DE

4

# 26 at 1). Thus, this court determines that plaintiffs have dropped their claims against Securitas. All claims against Securitas will be dismissed.

  *B. Plaintiffs' Claims against Wal-Mart*

    1. Whether Plaintiffs Can Reclassify Their Claims

In their complaint, plaintiffs allege that Wal-Mart violated their rights to be free from unreasonable searches and seizures, and that Wal-Mart's actions constituted harassment and criminal conversion. (DE # 1 at 2.) Plaintiffs' response to Wal-Mart's motion attempts to reclassify these claims, arguing that they are not alleging a Fourth Amendment claim or raising state law claims for harassment or conversion, but rather "are pursuing a civil rights lawsuit against Wal-Mart . . . for racial harassment and discrimination." (DE # 26 at 3.)

The court therefore finds that plaintiffs have waived any Fourth Amendment or state law conversion or harassment claims. *See Palmer v. Marion County*, 327 F.3d 588, 587-98 (7th Cir. 2003) (claims that defendant "failed to delineate" in response brief were "deemed abandoned"). The question remains, though, whether plaintiffs can characterize their case as simply a "civil rights lawsuit." Citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993), Wal-Mart contends that plaintiffs cannot refashion their allegations as different claims. Having examined *Harrell*, the only relevant portion holds that

> [i]f a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint.

5

*Id.* at 236.

As this quote reveals, *Harrell* deals with factual allegations, and prohibits parties from adding completely new factual allegations in a response brief to avoid dismissal. *Id. Harrell* does *not* say, however, as both Wal-Mart and Securitas argue, that parties cannot rework their claims in a response to a motion to dismiss. Furthermore, this argument is in tension with the Seventh Circuit's direction that "[i]nstead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F. 2d 1073, 1078 (7th Cir. 1992) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Keeping this dictate in mind, and considering that plaintiffs are proceeding *pro se*, the court has examined cases with similar facts to see what causes of action have been raised. It appears that customers who allege racially motivated mistreatment most commonly bring suit under 42 U.S.C. § 1981 and § 1982. *See, e.g., Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 753-55 (7th Cir. 2006) (man of Middle Eastern decent brought suit under § 1981 against gas station after being accused of trying to leave without paying); *Morris v. Office Max, Inc.*, 89 F.3d 411, 411-12 (7th Cir. 1996) (African-American men brought suit under § 1981 and § 1982 after store manager thought they looked suspicious and called police); *Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385, 388 (S.D.N.Y. 2006) (African-American customer sued under § 1981 and § 1982 after store refused to let him leave without showing receipt for purchase); *L. Starnes-England v.*

*Crest Discount Foods, Inc.*, No. CIV-05-301, 2005 WL 20305318, at *1-*2 (W.D. Okla. Aug. 18, 2005) (African-American customer who was asked for receipt after making purchase and leaving store brought suit under § 1981 and § 1982); *Dobson v. Central Carolina Bank & Trust Co.*, 240 F. Supp. 2d 516, 517-18 (M.D.N.C. 2003) (African-American customer brought suit against bank under § 1981 and § 1982 after employee called police to report him as "suspicious"); *Lewis v. J.C. Penney Co. Inc.*, 948 F. Supp. 367, 368-70 (D. Del. 1996) (African-American woman brought suit under § 1981 after being stopped and questioned on suspicion of shoplifting). Thus, this court will construe plaintiffs' case, which they only identify as a "civil rights lawsuit . . . for racial harassment and discrimination" (DE # 26 at 3), as claims under 42 U.S.C. § 1981 and § 1982.

2. Plaintiffs' § 1981 & § 1982 Claims

Section 1981 provides that all persons, regardless of race, shall have the same right to "make and enforce contracts." *See* 42 U.S.C. § 1981(a). In 1991, Congress expanded the scope of § 1981 to include the right to "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." See 42 U.S.C. § 1981(b). Under § 1981, to establish a prima facie claim of illegal discrimination in retail establishments, a plaintiff must show that (1) he or she is a member of a racial minority; (2) the defendants had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract. *Pourghoraishi*, 449 F.3d at 756.

7

Plaintiffs' have successfully alleged that they are African-American, and the complaint, especially at this point in the proceedings, adequately infers that Wal-Mart intended to discriminate against them on the basis of race. However the alleged discrimination in this case—asking plaintiffs for a receipt as they were leaving the store after making a purchase—did not involve the making or enforcing of a contract.[1] Rather, the alleged discrimination occurred after plaintiffs had successfully made their purchases. As the Eighth Circuit noted, "[w]hile there is scant precedent, courts that have addressed the issue have concluded that once the purchase is completed, no contractual relationship remains." *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851 (8th Cir. 2001). (citing cases). Here, the allegedly discriminatory act occurred *after* plaintiff's transaction was finished, and did not interfere with their purchase. *See Morris*, 89 F.3d at 414 (plaintiffs could not "point to specific facts showing that [defendant] deprived them of any of the enumerated rights in § 1981, and specifically, the right to make and enforce a contract . . .[t]hey were denied neither admittance nor service, nor were they asked to leave the store"). Thus, the alleged discrimination was not part of the "contract" or sale, and cannot be the basis for liability under § 1981.

Furthermore, this claim has already been raised in nearly identical circumstances in *Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385 (S.D.N.Y. 2006), and that court rejected the § 1981 claim on the same basis. *See id.* at 392-93. There, an African-American

---

[1] Large stores such as Wal-Mart often conduct such receipt checks, not as some sort of additional condition to the sale, but in effort to foil shoplifters. *See, e.g., Khan v. Costco Wholesale, Inc.*, No. 99 CV 3944, 2001 WL 1602168, at *1 (E.D.N.Y. Dec. 13, 2001).

plaintiff was leaving a store with purchased merchandise when he was stopped and asked for a receipt. *Id.* at 388. The plaintiff refused to provide a receipt and was detained. *Id.* The fact that Bishop's § 1981 claim was also dismissed, *see id.* at 393, bolsters this court's conclusion.

Plaintiff's § 1982 claim runs into similar problems. Section 1982 states as follows:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982.

To state a claim under § 1982, plaintiffs must allege that defendants interfered with their rights regarding real or personal property, *see City of Memphis v. Greene*, 451 U.S. 100, 121-22 (1981), and in this case, the only right that appears to be at issue is plaintiffs' right to purchase property. However, Wal-Mart's actions—preventing plaintiffs from leaving Wal-Mart with their goods unless they showed their receipt—did not interfere or implicate plaintiffs' rights to purchase personal property. Plaintiffs had already finished buying their goods, and having their receipts checked was merely a formality to exit the store. Thus, the alleged discriminatory act– asking the African-American plaintiffs for a receipt—did not interfere with plaintiffs' right to purchase personal property. *See Morris*, 89 F.3d at 414-15 (store calling police and claiming potential customers looked suspicious did not "impair [the customers'] ability to exercise property rights"). The alleged factual circumstances do not support a claim under § 1982.

9

**V. CONCLUSION**

The defendants' motions to dismiss (DE # 13, 21) are therefore **GRANTED**. This case is **DISMISSED**.

**SO ORDERED.**

**DATE:** April 8, 2008

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT